

**Signed and Filed: July 14, 2026**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 26-30051-DM |
| PHONEIC, INC., | ) |
| | ) Chapter 11 |
| Debtor. | ) Subchapter V |
| | ) |
| | ) |
| | ) |

## MEMORANDUM DECISION REGARDING CONFIRMATION OF CHAPTER 11 SUBCHAPTER V PLAN OF REORGANIZATION

### I. Introduction.

At a hearing on May 29, 2026, the court expressed concerns about various matters in the Amended Chapter 11 Small Business Plan *(Dated April 24, 2026)* (Dkt. 34) ("Amended Plan"). The court also heard from creditor Andrew Won orally and as set forth in his Opposition Motion Objecting to Discharge *Plan Of Reorganization* (Dkt. 38).

The court directed further briefing and on June 10, 2026, Debtor filed its Supplemental Brief/Memorandum in support of *Confirmation of Plan of Reorganization for Small Business Under Chapter 11 (Dated April 24, 2026)* (Dkt. 43) (the "Supplemental

-1-

Brief"). Notably, Debtor did not file a revised plan but only adhered to the Amended Plan despite the obvious conflicting terms either stated specifically or referred to generally in its Supplemental Brief.

On June 17, 2026, Mr. Won filed his Supplemental Brief in Opposition to Confirmation of the Plan Submitted by Debtor for Reorganization as Small Business Under Chapter 11 (Dkt. 44) (together with Dkt 38, the "Won Objections").

## II.    Denial of Won Objection.

Mr. Won complains without elaboration or cogent legal analysis, that because what the Debtor describes as the SAFE agreements (and presumably the other similar documents identified in the Supplemental Brief), they deal with non-accrual of interest, no maturity date or any monetary payment obligations, they exceed the limited jurisdiction of the court. He adds a question of whether those agreements should be treated under the Amended Plan in a separate class as they have no effect on the Debtor's estate.

As a separate argument, Mr. Won responds to the Debtor's election to delete from its proposed (but not yet filed) plan some equity grants to the members of Class 3(A) by suggesting that doing so violates California law.

The court rejects both of these arguments here.  The ultimate plan the court will confirm can deal with the SAFE agreements (and similar ones) as the Debtor suggests and they certainly come within the court's jurisdiction when confirming chapter 11 plan.

Case: 26-30051   Doc# 49   Filed: 07/14/26   Entered: 07/14/26 17:25:07   Page 2 of 6

As for Mr. Won's argument of some future violation of California law, his concerns are pure speculation at this point. More to the point, if such conduct occurs after confirmation of a plan or the conclusion of this bankruptcy case, and Mr. Won or any other party believes that any such treatment is unlawful, the remedy will be found under state law in the state courts, not in the bankruptcy court.

For these reasons, the Won Objections are overruled.

Mr. Won also argues that his expected motion to remand his removed lawsuit to state court will implicate the preservation of California law-based claims.  Those arguments, to the extent they may be valid at all, have nothing to do with whether a plan should be confirmed.[1]  Rather, they will be dealt with if and when the court chooses to remand any portion of the removed adversary proceeding to state court.

**III.   Court's Concerns About Amended Plan and Debtor's Current Position.**

Preliminarily, the court accepts the argument made by Debtor in its Supplemental Brief concerning the SAFE agreements and the apparently similar Convertible Security Purchase Agreements that it considers as functionally equivalent to the SAFE agreements.

While the court might speculate on whether SAFE agreements really are executory contracts, the debate either way is little more one of angels on the head of a pin.  Either way, the

---

[1]  Derivative claims belonging to the Debtor will be dealt with by the confirmed plan and presumably dismisses by PAI, Inc. as buyer.

-3-

outcome is of no material impact on the expected final plan and the conclusion of this case.  Debtor's explanation of these agreements is acceptable.

The more troublesome issues presented by the Debtor's Supplemental Brief are what happened after the May 29 hearing and what the Debtor now argues.  In that brief, the Debtor ponders, without taking a definitive position, whether or not Scopus Ventures Fund I, LP ("Scopus") is an insider, whether or not it holds a secured claim, what might happen whether or not PAI, Inc. advances $50,000 to the Debtor to fund the plan, and twice makes reference to "inadvertent" errors concerning statements made in the April 24 liquidation analysis that supported the Amended Plan.  Then, on page 4 of the Supplemental Brief, Debtor sets forth a "revised liquidation analysis" that it believes is sufficient for the court to confirm the plan. But Debtor has not submitted a newly revised Plan!

Even worst, the Supplemental Brief states that: "As such, Debtor circulated revised ballots to all Class 3(A) claimants, and a revised ballot summary is set forth in Exhibit C and the revised ballots received are attached hereto as Exhibit D."

The revised ballots do not include any explanation as to Class 3(A) why or how they are revised nor show what else was served.  The ballots in Exhibit D specifically refer to the Amended Plan (April 24) and go on to explain to the recipients of those ballots that they should review the plan, etc.

Whether this is a series of "inadvertent" errors, intentional misrepresentations, or simply sloppy lawyering, it

-4-

is no way to expect the court to be comfortable confirming any plan under 11 U.S.C. § 1191(a) at this time.

**IV.  Disposition.**

Debtor should file and serve on all members of Class 3(A): (1) a revised plan (described specifically as **"Chapter 11 Plan Small Business Subchapter V (*date)"**) that corrects all of these discrepancies described above and the changes voluntarily made by the Debtor[2]; (2) a copy of this Memorandum Decision; and (3) a letter explaining why re-solicitation is necessary and that members of that class have two weeks from the date of service to submit an amended ballot changing their vote, and that if they do not do so, their original ballots will stand as previously filed.

When the time has run, Debtor should file a revised ballot summary and any newly submitted ballots, and if all is in order, a proposed order confirming the revised plan.

*** END OF MEMORANDUM DECISION ***

---

[2]  The plan should take a specific position as to the status of Scopus and any contribution by PAI, Inc.  The court and creditors should not be left to speculate about these matters when they review the new plan.

-5-

Case: 26-30051   Doc# 49   Filed: 07/14/26   Entered: 07/14/26 17:25:07   Page 5 of 6

ECF Recipients

-6-